1   Michael DeBenon (SBN 143205)
2   mdebenon@rdlawfirm.com
    Jill Reza (SBN 223552)
3   jreza@rdlawfirm.com
    REZA & DEBENON
4   2600 Michelson Drive, Suite 800
5   Irvine, CA  92612
    Tel  (949) 851-7770
6   Fax (949) 851-7773

7
    Attorneys for Defendants,
8   Trong Van Nguyen, Lan Que Truong Nguyen,
9   Hung Van Nguyen, and D&D Gold Product
    Corporation
10

11              **UNITED STATES DISTRICT COURT**

12          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13                     **WESTERN DIVISION**

| | |
|---|---|
| 14  SAM LIANG, an individual, | ) Civil Action No. CV08-8211 PSG |
| | ) (JCx) |
| 15              Plaintiff, | ) |
| | ) **DEFENDANTS' MEMORANDUM** |
| 16  v. | ) **OF POINTS AND AUTHORITIES** |
| | ) **IN OPPOSITION TO PLAINTIFF'S** |
| 17  TRONG VAN NGUYEN, LAN QUE | ) **MOTION FOR PRELIMINARY** |
| 18  TRUONG NGUYEN, and HUNG VAN | ) **INJUNCTION; DECLARATION OF** |
| NGUYEN, individuals, and D&D | ) **JILL REZA; DECLARATION OF** |
| 19  GOLD PRODUCT CORPORATION, a | ) **TRONG VAN NGUYEN** |
| California corporation, | ) |
| 20 | ) Date:   February 2, 2009 |
| 21              Defendants. | ) Time:   1:30 p.m. |
| | ) Crtrm:  790 |
| 22 | ) Judge:  Hon. Philip S. Gutierrez |
| 23 ————————————————————— | ) |

24        Defendants, Trong Van Nguyen, Lan Que Truong Nguyen, Hung Van

25   Nguyen, and D&D Gold Product Corporation, [collectively D&D GOLD],

26   respectfully submit this Memorandum of Points and Authorities in Opposition to

27   Plaintiff's Motion for Preliminary Injunction.

28

(sidebar) REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................... 7

II. STATEMENT OF FACTS ................................................. 8

    A. Facts Relating to the Underlying Lawsuit .......................... 8

III. STANDARD FOR ISSUING A PRELIMINARY INJUNCTION ........ 12

IV. THERE IS NO EMERGENCY ............................................. 13

  A. Plaintiff's Delay and Dilatory Behavior Undermines His Claim of
     Irreparable Harm ..................................................... 14

  B. Monetary Damages Will Afford Complete Relief to Plaintiff If
     He Prevails at Trial .................................................. 15

V. THE BALANCE OF HARDSHIPS TIPS SHARPLY IN D&D'S FAVOR
  BECAUSE PLAINTIFF SEEKS TO ALTER THE STATUS QUO BY
  HALTING D&D GOLD'S ALREADY ESTABLISHED USE OF ITS
  TRADEMARK ............................................................ 16

VI. PLAINTIFF FAILS TO SHOW A PROBABILITY OF SUCCESS ON
   THE MERITS ............................................................ 17

  A. Plaintiff is Not Likely to Succeed on the Merits Because He Has Not
     Shown that He Owns Valid Trademarks ............................. 17

     1. Plaintiff Has Not Met His Burden to Establish Rights in any
       False Designation of Origin Claim Based on 15 U.S.C. § 1125(a)
       ................................................................. 18

     2. D&D Gold's Ownership of the Goodwill Bard Plaintiff's
       Trademark Claims ................................................ 19

     3. The Trademark Rights Follow the Name and the Goodwill . 20

  B. Plaintiff is Not Likely to Succeed on the Merits Because D&D Gold is
     Likely to Show that the Marks are Abandoned When Plaintiff Did Not
     Continuously Use the Marks for Three Years ...................... 21

  C. Plaintiff is Not Likely to Succeed on the Merits Because D&D Gold's
     Fair Use Defense is an Absolute Defense ........................... 21

**REZA & DEBENON**
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

i

1. A bare allegation of breach of contract cannot support an assertion of trademark rights ……………………………………….. 23

VII.  PRELIMINARY RELIEF WOULD NOT SERVE THE PUBLIC INTEREST ………………………………………………… 23

VIII. PLAINTIFF MUST SUBMIT A SUBSTANTIAL BOND IF THE INJUNCTION WERE TO ISSUE ……………………………………… 24

IX. CONCLUSION ………………………………………………… 24

**REZA & DEBENON**
2600 Michelson Drive, Ste 800
Irvine, CA  92612
Telephone (949) 851-7770

ii

# TABLE OF AUTHORITIES

CASES

*24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 277 F. Supp. 2d 356, 361 U.S.P.Q.2d (BNA) 1031, 1033 (S.D. N.Y. 2003) ………………………... 16

*Adams Apple Distributing Co. v. Papeleras Reunidas, S.A.*, 773 F.2d 925 (7th Cir. 1985) ………………………………………………………… 21

*Beauty Time, Inc. v. VU Skin Systems, Inc.*, 118 F.3d 140 (3d Cir. 1997) .. 21

*Berni v. International Gourmet Restaurants of America, Inc.*, 838 F.2d 642 (2d Cir. 1988) ………………………………………………………… 21

*Bhiari v. Gross*, 119 F.Supp.2d 309 (S.D.N.Y. 2000) ........................... 12, 21

*Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3rd Cir. 1995) ………………………………………………………… 13

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003) .. ………………………………………………………………….. 20

*Department of Parks & Rec. for State of Calif. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118 ………………………………………………………… 24

*ETW Corp. v. Jireh Publ, Inc.*, 332 F.3d 915 (6th Cir. 2003) ........... 17, 21, 22

*Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988) ………………... 12

*GTE Corp. v. Williams,* 731 F.3d 676 (10th Cir. 1984 on remand, 649 F. Supp. 164 (D. Utah 1986), aff'd, 904 F.2d 36 (10th Cir. 1990) ............................. 12, 14

*Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078 (Fed. Cir. 1983) ………………………………………………………………… 15

*Herbalife International, Inc. v. Lumene North America, LLC,* 2007 U.S. Dist. LEXIS 78436, at *15 (C.D. Cal. 2007) ..................................... 14

*KP Permanent Make-Up Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 125 S.Ct. 542 (2004) ............................................... 22

*M2 Software Inc. v. Madacy Entm 't,* 421 F.3d 1073 (9th Cir. 2005) …….. 17

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

*Mattel, Inc. v. MCA Records, Inc.*, 28 F.Supp.2d **1120** (C.D. Cal. 1998) aff'd, 296 F.3d 894 (9th Cir. 2002) …………………………………………………... 22

*Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883 (7th Cir. 2000) ………. 24

*Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995) …………………………………………………………………. 13

*Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838 (9th Cir. 1969) ……………………………………………………………………………. 21

*Morand Bros. v. Chippewa Springs Corp.*, 2 F.2d 237, 239 (7th Cir. 1924) ……………………………………………………………………………... 21

*Nancy Ann Storybook Dolls, Inc. v. Dollcraft*, 197 F.2d 293 (9th Cir. 1952) ... …………………………………………………………………………… 17, 22

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985) .. 20

*Privitera v. California Board of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991) …………………………………………………………… 13

*Reno Air Racing Ass 'n, Inc. v. Jerry McCord*, 452 F.3d 1126 (9th Cir. 2006) . …………………………………………………………………………… 17

*Rodeo Collection.Ltd . v. West Seventh*, 812 F.2d 1215 (9th Cir. 1987) ..... 12

*Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ……………………………………………………………… 13

*Seiko Kabushiki Kaisha v. Swiss Watch International, Inc.*, 188 F.3d 1350 (S.D. Fl. 2002) ......................................................................................... 12

*Sengoku Works Ltd v. RMC Intern., Ltd.*, 96 F.3d 1217 (9th Cir. 1996) …. 24

*Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 48 n. 2 (9th Cir.1971) …….. 20

*Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) ……………………………………………………………………… 12

*Stokely- Van Camp, Inc. v. Coca-Cola Co.*, 2 U.S.P.Q.2d 1225 (N.D. Ill. 1987) .. ……………………………………………………………………….. 15

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

iv

1
2
*Sugar Busters LLC v. Brennan*, 177 F.3d 258 (5th Cir. 1999) ........... 21, 25

3
*The Schafer Co. v. Innco Mgmt. Corp.*, 797 F. Supp. 477 (E.D.N. 1992), aff'd w/o
4
op., 995 F.2d 1064 (4th Cir. 1993) ................................................ 21

5
*Toho Company, Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir. 1981) ..
6
................................................................................ 17

7
*Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964 (2d Cir. 1995), on
remand, 989 F. Supp. 203, aff'd 165 F.3d 15 (2d Cir. 1999), cert. denied, 527 U.S.
8
1036 (1999). ........................................................................ 14

9
*Trust Co. Bank v. The Putnam Publishing Group, Inc.*, 5 U.S.P.Q. 1874 (C.D. Cal.
10
1988) ................................................................................ 15

11
STATUTES
12
13
15 U.S.C. § 1114 ................................................................... 17

14
15 U.S.C. § 1115(b)(4). ............................................................ 21

15
15 U.S.C. § 1125(a) ............................................................ 17, 18

16
15 U.S.C. § 1125(c) ............................................................... 17

17
18
15 U.S.C. § 1127 .................................................................. 21
19
20
21
22
23
24
25
26
27
28

v

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

# I. INTRODUCTION

This is a classic case of a plaintiff rushing to the courthouse-albeit after delaying for four years-to claim injury before any harm, irreparable or otherwise, has become sufficiently imminent and immediate as to require drastic injunctive relief from a defendant who has been in business for twenty years and has enjoyed the *goodwill* associated with a superior product of outstanding quality that the public has come to know and appreciate.

As a threshold matter, Plaintiff has no valid Trademark under federal or state law. Consequently, Plaintiff cannot show any probability of success on the merits. Even if Plaintiff did have a valid Trademark, the more appropriate remedy would be monetary damages rather than injunctive relief. However, this Court need not reach any resolution of whether Plaintiff has demonstrated a likelihood of success on the merits because there is a much easier basis for the Court to deny Plaintiff's request for emergency relief: **there is no emergency**. Plaintiff's strongest argument for emergency relief is that merchants will not sale his products because of trademark confusion and that without injunctive relief, his perishable food products are at risk of spoiling. Yet, the food products in question are canned, bottled, and dry goods, all of which have sufficient shelf life beyond the date of trial in this matter.

D&D Gold respectfully requests this Court to deny Plaintiff's unjustified Motion for Preliminary Injunction for the following reasons:

*1.    Plaintiff has failed to demonstrate that irreparable harm will result if a preliminary injunction is not issued because there is no temporal urgency in seeking emergency relief for food products that have a three-to-five year shelf life;*

2

2.   *Plaintiff fails to establish that the balance of hardship favors issuance of a preliminary injunction because, the truth is, D&D Gold is the real victim that will suffer substantially greater hardship if it is enjoined from using its mark, which has incurred significant goodwill in its high-quality products;*

3.   *Plaintiff cannot show a probability of success on the merits because Plaintiff has not shown that it owns a valid trademark to begin with; and*

4.   *Monetary damages will afford complete relief to Plaintiff if he prevails at trial.*

Based on the foregoing reasons, issuance of a preliminary injunction would be tantamount to a final, erroneous decision on the merits.

## II.  STATEMENT OF FACTS

The facts are set forth in the accompanying declaration of Trong Van Nguyen, and the exhibits thereto.

### A.   FACTS RELATING TO THE UNDERLYING LAWSUIT

Trong Nguyen and Sam Liang became friends in the early eighties. Liang was working for a man named Luu, who was the sole shareholder of D&D Gold Products Corporation.  Liang complained to Nguyen that Luu was making him work long hours without pay.  The only benefit to the arrangement was that Liang would be allowed to live in one of the rooms in Luu's home.

Liang told Nguyen that D&D Gold would be shutting down because grand repairs were needed for the equipment and Luu could no longer afford to keep the company in business.  Nguyen contacted Luu and proposed a business venture whereby Nguyen would make the necessary repairs to the equipment and help to

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

DEFENDANTS' MEMO OF P/A IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

get the business profitable.  Nguyen insisted that Liang receive compensation for his labor.  Luu told Nguyen he did not have any money but he did agree to transfer some corporate shares to Liang.

Shortly after the company started to get back on its feet, Nguyen and Liang entered into an agreement whereby Nguyen paid a sum of money to Luu for all of his corporate shares.  Nguyen became the majority shareholder with two-thirds of the stock and Liang received the remaining one-third.  Liang was appointed and accepted his position as president of the company.

### 1.    Liang Is Caught Stealing Money From D&D Gold

On or about January 4, 1995, while Liang was an Officer and Director of D&D Gold Product Corporation, he secretly formed a competing corporation called Golden Apex, Inc.  Liang's secret corporation positioned itself as an intermediary between D&D Gold and its own suppliers.  Golden Apex purchased merchandise and ingredients from the suppliers and then turned around and re-sold the merchandise and ingredients to D&D Gold at a substantial markup.  To make matters worse, Liang and his wife, Stella Tran, used D&D Gold's own warehouse facilities to manufacture products after hours and then sold the products at a discount in direct competition with D&D Gold.  This conspiracy continued for about three years before the Nguyens ever even suspected the scam.  The Nguyens estimate that Liang and his wife usurped more than three million dollars in unjust profits and conversion of goods from D&D Gold Products Corporation during this time. (Nguyen Decl. ¶ 10.)

The Nguyens were devastated to learn that their trusted friend had deceived them so.  After the Nguyens confronted Liang about these discoveries, Liang shamefully walked away from all and every duty that he assumed as President and Director of D&D Gold Product Corporation.  Thereafter, the Nguyens changed the locks on the warehouse and all passwords to D&D Gold's bank accounts and production systems.  It was not long before the Nguyens began receiving irate

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

4

1   telephone calls from several merchants who were demanding their usual shipment

2   of merchandise.  (Nguyen Decl. ¶11.)

3        The Nguyens learned that Liang and his wife, had been diverting D&D

4   Gold's merchandise and selling D&D products "after hours and from the back

5   door" on a cash basis.  (Nguyen Decl. ¶8.)

6        As the deceit unraveled, word spread throughout the tight-knit Asian

7   community and the merchants and customers affirmed their loyalty to the Nguyens

8   and D&D Gold Product Corporation.  Meanwhile, the Nguyens were trying to

9   negotiate a buyout of Liang's shares of D&D Gold stock.   (Nguyen Decl. ¶ 12.)

10        **2.      Liang Files a Retaliatory Lawsuit**

11        On or about February 6, 2001, in a surprising twist, Liang initiated a

12   lawsuit against the Nguyens!  Naturally, defendants denied Liang's outrageous

13   accusations of negligence, waste, mismanagement, breach of fiduciary duty, etc.,

14   and cross-complained with allegations that Liang and his wife, Stella Tran,

15   conspired to defraud and convert the assets of D&D Gold Product Corporation,

16   resulting in millions of dollars in unjust profits and conversion of goods from D&D

17   Gold Products Corporation.  (Nguyen Decl. ¶13.)

18        **3.      The Settlement**

19        After three years of protracted litigation, the parties entered into a

20   settlement agreement whereby the Nguyens agreed to pay Liang the sum of

21   $700,000 and Plaintiff agreed to surrender his ownership interest in D&D Gold

22   Corporation.  D&D Gold had used several variations of a three-bell design/pattern

23   in marketing its products and establishing good will.  During negotiations, Liang

24   insisted that the Nguyens assign one of the design/patterns to him.

25   ///

26   ///

27   ///

28

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA  92612
Telephone (949) 851-7770

DEFENDANTS' MEMO OF P/A IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

1   Therefore, the parties agreed to assign the following design/pattern to Liang and

2   they specifically included a sample of the design/pattern as an exhibit to the

3   Settlement Agreement:



*Three Golden Bell Design /Pattern Assigned to Liang*

10   (Nguyen Decl. ¶ 14,15.)

11   ### 4.   <u>**D&D Gold Begins Using Another Bell Design**</u>

12   The Settlement Agreement allowed for D&D Gold to exhaust its

13   remaining merchandise bearing Liang's design in exchange for a licensing fee.

14   D&D Gold immediately began using another three-bell design and affixed this

15   distinctive mark on its packaging after the remaining inventory was exhausted:



*D&D Gold Product Corporation's Registered Trademark*

22   (Nguyen Decl. ¶ 17.)

23   ### 5.   <u>**D&D Gold Registers Trademarks To Protect Them From Third Party Exploitation**</u>

25   To ensure that the word "D&D Gold" would not be exploited by third

26   party users, the Nguyens were advised to trademark the phrase.  While the

27   Nguyens believe they have a clear fair use defense in using the phrase "D&D

28

1  Gold," they have trademarked a different word mark, "D&D Gold Products," in

2  conjunction with the three-bell design variation that was never contemplated to be

3  part of the Settlement Agreement.  (Nguyen Decl. ¶ 18.)

## III.  STANDARD FOR ISSUING A PRELIMINARY INJUNCTION

5  A preliminary injunction has the primary function is to preserve the *status*

6  *quo* and to prevent irreparable loss of rights prior to judgment.  *Sierra On–Line,*

7  *Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Faheem-El v.*

8  *Klincar*, 841 F.2d 712, 717 (7th Cir. 1988) ("a preliminary injunction is a drastic

9  and extraordinary remedy that is not to be routinely granted.)

10  In the Ninth Circuit, a party requesting a preliminary injunction must show

11  "either (1) a combination of probable success on the merits and the possibility of

12  irreparable harm, or (2) that serious questions are raised and the balance of

13  hardships tips in the moving party's favor." *Rodeo Collection, Ltd. v. West*

14  *Seventh,* 812 F.2d 1215, 1217 (9th Cir. 1987).  These are not two separate tests.

15  Rather, they are the opposite ends of a "continuum in which the required showing

16  of harm varies inversely with the required showing of meritoriousness." *Id.*

17  (internal quotations and citations omitted).  A preliminary injunction is an

18  extraordinary remedy--it is the exception, not the rule. *GTE Corp. v. Williams,* 731

19  F.2d 676, 678 (10th Cir. 1984), on remand, 649 F. Supp. 164 (D. Utah 1986),

20  aff'd, 904 F.2d 536 (10th Cir. 1990).  Injunction is a drastic remedy so the standard

21  for an injunction is high. *Seiko Kabushiki Kaisha v. Swiss Watch International,*

22  *Inc.,* 188 F.3d 1350, 1354 (S.D. Fl. 2002).   Due to the great potential for harm

23  from the issuance of an injunction, the moving party must sustain a heavy burden.

24  *Bhiari v. Gross,* 119 F.Supp.2d 309, 315 (S.D.N.Y. 2000).

25  Based on the foregoing standard, Plaintiff's request for a preliminary

26  injunction requires careful scrutiny in order to avoid any unnecessary harm to

27  D&D Gold Product Corporation.  Contrary to Plaintiff's claims, it is D&D Gold

28  that will suffer substantial harm, and not Plaintiff, if it is stripped of its trademark

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

7

and, necessarily, its good will.  Having already spent considerable sums to create, develop, and market its products and packaging, D&D Gold will lose the benefit of such efforts, incur substantial costs in rebranding the products, and, significantly, incur incalculable damage to its reputation among its merchants and customers.

Plaintiff's efforts to strip D&D Gold of its trademark, with no basis and after delaying until D&D Gold has developed even more goodwill can only be explained as a bad-faith attempt by Plaintiff to force a favorable monetary settlement from what it perceives to be a deep pocket.

### IV.  THERE IS NO EMERGENCY

Plaintiff urges this Court to consider the emergent nature of its "food products waiting in storage." See *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  Plaintiff *misleads* this Court into believing the food products in question ". . . *will soon spoil and then will have to be discarded*."  The truth is, the food products will most certainly not spoil any time soon.  D&D Gold respectfully reminds this Court that the food products in question are, in fact, canned and bottled goods and/or dry seasoning products, with a shelf life of three-to-five years.

If a trial on the merits is possible before the threatened harm will occur, a preliminary injunction should not issue.  *Privitera v. California Board of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991).  The threat must have a temporal urgencies such that immediate and irreparable harm will occur if there is any delay in obtaining relief.  *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  If the harm complained of is self-inflicted, it does not qualify as irreparable.  *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3rd Cir. 1995); *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003).

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

1    Plaintiff cites to *Mission Power* to support the proposition that temporal

2    urgency necessitates emergency relief.  In *Mission Power*, the plaintiff

3    inadvertently turned over privileged documents when responding to a request for

4    production of documents.  Plaintiff filed an ex parte application for an order

5    shortening time to hear plaintiff's motion to compel the return of the documents on

6    the basis that plaintiff would be irreparably prejudiced if its motion had to wait for

7    a regularly calendared motion day.  The court flatly denied plaintiff's ex parte

8    application.  *Id*. at 493.

9    The court admonished the attorney that ex parte communications are

10   reserved for temporal urgencies such that immediate and irreparable harm will

11   occur if there is any delay in obtaining relief.  *Id*. at 489.  The court then noted

12   appropriate examples:  "The tomatoes will spoil if we don't move them

13   immediately;" or "If we alert them, they will move the yacht before we can seize

14   it."  *Id*.

15   Here, the food products in question are canned and bottled goods and/or dry

16   seasoning products, not tomatoes.  Canned and dry goods have a shelf life of three-

17   to-five years and there is certainly no temporal urgency in seeking emergency

18   relief.  Therefore, the preliminary injunction should be denied.

19   **A.    Plaintiff's Delay and Dilatory Behavior Undermines His Claim of**

20   **Irreparable Harm**

21   Any delay in requesting injunctive relief undermines any claim of

22   irreparable harm and may justify denial of a preliminary injunction.  *GTE Corp*.,

23   731 F.2d at 678; *Tough Traveler, Ltd. v. Outbound Products,* 60 F.3d 964, 968 (2d

24   Cir. 1995), on remand, 989 F. Supp. 203, aff'd, 165 F.3d 15 (2d Cir. 1999), *cert.*

25   *denied,* 527 U.S. 1036 (1999).  Thus, if a defendant proves delay in moving for a

26   preliminary injunction, it signals that there is no irreparable harm.  See *Herbalife*

27   *International, Inc. v. Lumene North America, LLC,* 2007 U.S. Dist. LEXIS 78436,

28   at *15 (C.D. Cal. 2007).

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

9

1   Here, Plaintiff, as the moving party, has delayed bringing the instant Motion

2   for Preliminary Injunction by filing for relief **nearly five years** after the Nguyens

3   applied for registration of the trademarks at issue.

4   In a futile attempt to intimidate the Nguyens, on or about October 1, 2008,

5   Plaintiff, through his counsel, sent correspondence to the Nguyens making

6   outlandish allegations regarding the registrations.  When the Nguyens promptly

7   countered the allegations in a letter dated October 13, 2008, Plaintiff made no

8   further efforts to substantiate his baseless allegations until the filing of this Motion,

9   two full months after the Nguyens' reply letter.

10   Even if Plaintiff asserts that there was possibility of resolution with the

11   exchange of correspondence, there is no justification for Plaintiff waiting two

12   months to bring this Motion, when there were no further efforts to meet and confer

13   with the Nguyens.  Courts have had no problem denying preliminary injunctive

14   relief where there has been such delay, as there is no need for an extraordinary

15   remedy.  *Stokely-Van Camp, Inc. v. Coca-Cola Co.,* 2 U.S.P.Q.2d 1225, 1227

16   (N.D. Ill. 1987).  Thus, Plaintiff's lack of exigency in bringing this Motion

17   supports lack of irreparable harm and this Court should deny Plaintiff's Motion in

18   its entirety.

19   **B.      Monetary Damages Will Afford Complete Relief to Plaintiff If He**

20   **Prevails at Trial**

21   Plaintiff has entered into a license arrangement with D&D Gold before,

22   calling for a standard royalty payment.  Thus, Plaintiff ultimately prevails in this

23   action, damages can readily be determined by a trier of fact.  Because money

24   damages provide an adequate remedy at law, an equitable action for injunction

25   cannot be maintained. *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078

26   (Fed. Cir. 1983) (reasonable royalty calculable if plaintiff had licensed its patented

27   invention to numerous competitors); *Trust Co. Bank v. The Putnam Publishing*

28   *Group, Inc.*, 5 U.S.P.Q. 1874 (C.D. Cal. 1988) (injunction denied in copyright

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

10

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

1  action as harm from lost sales could be adequately compensated by money

2  damages).

3  **V.    THE BALANCE OF HARDSHIPS TIPS SHARPLY IN D&D'S**

4  **FAVOR BECAUSE PLAINTIFF SEEKS TO ALTER THE STATUS QUO BY HALTING D&D GOLD'S ALREADY ESTABLISHED USE**

5  **OF ITS TRADEMARK**

6  It has been said that where preliminary relief will alter the status quo, or will

7  provide substantially all the relief sought, and that relief cannot be undone even if

8  the defendant prevails at a trial on the merits, a higher standard applies; and that

9  under this higher standard a preliminary injunction should issue only upon a clear

10  showing that the moving party is entitled to the relief requested, or where extreme

11  or very serious damage will result from a denial of preliminary relief. *24 Hour*

12  *Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 277 F. Supp. 2d 356, 361

13  U.S.P.Q.2d (BNA) 1031, 1033 (S.D. N.Y. 2003).

14  Even if Plaintiff had met its burden of proof to show that it owns valid

15  protectable trademarks and irreparable harm, or to raise serious questions about the

16  merits of this case, the balance of hardships in this instance tips sharply in D&D

17  Gold's favor.

18  If the injunction does not issue, Plaintiff would be in the same situation it

19  has been for the past four months.  Plaintiff has only offered hypothetical sales; has

20  not suffered any actual confusion; and relies only on the presumption of irreparable

21  harm to its purported trademarks.

22  D&D Gold, on the other hand, will suffer great hardship if an injunction is

23  issued.  D&D Gold's will incur substantial expenses and will face financial strife if

24  it is force to rebrand and redevelop its products.  Further, D&D Gold would lose

25  goodwill with its merchants and customers because they would be prevented from

26  using a name in the public domain even though others are free to use the name.

27  D&D Gold would incur customer backlash for removing their products from the

28  merchants' shelves, only to have them replaced if it wins at trial.

11

## VI.   PLAINTIFF FAILS TO SHOW A PROBABILITY OF SUCCESS ON THE MERITS

Plaintiff's motion is directed only to its claims of trademark infringement under 15 U.S.C. § 1114 and trademark dilution under 15 U.S.C. § 1125(c). Plaintiff cannot demonstrate a likelihood of success on either claim because he did not show that it actually owns valid trademark rights.  Even if he did, D&D Gold's fair use and abandonment defenses preclude Plaintiff's claims.

### A.   Plaintiff is Not Likely to Succeed on the Merits Because He Has Not Shown that He Owns Valid Trademarks

To be successful on his claim of infringement of a registered trademark under 15 U.S.C. § 1114, or an unregistered mark under 15 U.S.C. § 1125(a), Plaintiff must demonstrate (1) ownership of a valid trademark, and (2) the alleged infringer is using a mark that is likely to cause confusion, or to cause mistake, or to deceive consumers.  *Reno Air Racing Ass 'n, Inc. v. Jerry McCord,* 452 F.3d 1126, 1134 (9th Cir. 2006); see also *M2 Software Inc. v. Madacy Entm 't,* 421 F.3d 1073, 1080 n.5 (9th Cir. 2005).  In order to prevail on its dilution claim, Plaintiff must also demonstrate that it owns a valid trademark.  See *ETW Corp. v. Jireh Publ, Inc.,* 332 F.3d 915, 923 n. 7 (6th Cir. 2003).  If Plaintiff meets the first hurdle, the Court will then consider whether there is a likelihood of confusion or likelihood of dilution.  *Toho Company, Ltd v. Sears, Roebuck & Co.,* 645 F.2d 788, 790 (9th Cir. 1981); *Nancy Ann Storybook Dolls, Inc. v. Dollcraft,* 197 F.2d 293, 296 (9th Cir. 1952) ("But when the trade-mark claim falls to the ground because these names do not constitute valid trade-marks, the rest of [plaintiffs] case goes by the board."); See *ETW,* 332 F.3d at 923 n. 7.

Here, Plaintiff has ignored and certainly has not met the first prong of the test by not owning a valid trademark.  By diligently listing the factors required to show likelihood of confusion, Plaintiff is trying to confuse and mislead this Court into ignoring the chief requirement of actual trademark ownership.

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

1.  **Plaintiff Has Not Met His Burden to Establish Rights in any False Designation of Origin Claim Based on 15 U.S.C. § 1125(a).**

Infringement of unregistered marks must be pursued as an unfair competition action. See 15 U.S.C. § 1125(a).  Further, the owner of an unregistered mark will have to establish the validity of the mark, as well as his right to use the mark.

The trademark infringement claim is predicated on Plaintiff's contention that D&D Gold's use of the marks are likely to cause confusion for "actual or potential customers of Liang's products, and will damage the goodwill associated with Liang's Three Bells Mark."  Plaintiff alleges, "merchants will not accept goods from Liang because they wrongly believe [D&D Gold] to be the owners of the three bells design."  Plaintiff goes on to explain that if D&D Gold is permitted to continue marketing its products, customers will be misled into believing D&D Gold is acting on behalf of Plaintiff.  [Compl. ¶¶33, 34.]

Aside from the obvious flaw in Plaintiff's logic, (that he has any goodwill at all), the claim for trademark infringement fails for two reasons. First, the Partnership Agreement, upon which Plaintiff relies, demonstrates that Plaintiff has no rights to the name, goodwill, or merchandise revenues. Second, there is no possibility of confusion as to the source of the merchandise because Plaintiff has never had any merchandise.  It is clear that consumers and indeed merchants believe D&D Gold to be the owners of the three bells design because D&D Gold has continued to market its products since the parties went their separate ways.

D&D Gold's merchants and customers have longstanding relationships with D&D Gold and have been purchasing its products for twenty years.  The only confusion as to the source of the merchandise will arise when and if Plaintiff begins tries to his merchandise with the three bells logo, at which time D&D Gold will surely move for an emergency preliminary injunction.

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA  92612
Telephone (949) 851-7770

13

### 2.    D&D Gold's Ownership of the Goodwill Bard Plaintiff's Trademark Claims.

Section 43(a) of the Lanham Act "prohibits actions like trademark infringement that deceive consumers and impair a ***producer's goodwill***." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003). Indeed, the entire purpose of trademark law is to "provide [] national protection of trademarks in order to secure to the owner of the mark the ***goodwill*** of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985).

As threshold matter, trademark law requires an ***existing business*** to which ***goodwill*** could attach. See *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 48 n. 2 (9th Cir.1971) ("a trade-mark does not confer upon its owner the right to prohibit a competitor's use of the mark ***unless the owner himself uses the mark in connection with an existing business***"). California law defines business ***goodwill*** as property. Section 14102 of California's Business and Professions Code is even more to the point: "The goodwill of a business is property and is transferable."

Here, the ***goodwill*** in question is certainly not that of the Plaintiff. He transferred all of his D&D Gold ownership and necessarily the goodwill associated with it, nearly five years ago. Surely, Plaintiff is not attempting to argue that he has "goodwill" in products belonging to D&D Gold. How can Plaintiff allege likelihood of confusion for products he has **never even introduced into the United States marketplace**?

Plaintiff has admitted through the Partnership Agreement and the allegations in the Complaint that it has no right to the ***goodwill*** engendered by D&D Gold Corporation and no rights to the merchandise revenues. The ***goodwill*** is what is represented by the trademark. Since Plaintiff has no right to the ***goodwill***, or to the name D&D Gold, he does not have the right to allege a trademark infringement against D&D Gold because D&D Gold owns the name and ***goodwill***.

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

### 3. **The Trademark Rights Follow the Name and the Goodwill.**

Conveyance of goodwill generally includes tradenames and trademarks. *Morand Bros. v. Chippewa Springs Corp.*, 2 F.2d 237, 239 (7th Cir. 1924).   Just as the good will follows the name, a trademark of a particular business or of its owner is auxiliary to, and an inseparable part of, the good will of the enterprise.

"It may be added that it is the purpose of the law to protect by registration or injunction the exclusive use of a name, symbol, or sign of the ownership of a particular business to preserve and increase the value, patronage, and good will of the enterprise. A trademark, name, or sign of a particular business of an owner thereof is auxiliary to, and an inseparable part of, the good will of its possessor." *Hall v. Holstrom*, 106 Cal.App. 563, 569 (1930) (Emphasis supplied.)

Both at common law and under the Lanham Act, there are no rights in a trademark alone, and therefore no rights can be transferred apart from the product or business with which the mark has been associated.  *Berni v. International Gourmet Restaurants of America, Inc.*, 838 F.2d 642 (2d Cir. 1988); *Adams Apple Distributing Co. v. Papeleras Reunidas, S.A.*, 773 F.2d 925 (7th Cir. 1985); *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838 (9th Cir. 1969), since a trademark can have no existence in gross, unconnected to a business by which it is used. See *Beauty Time, Inc. v. VU Skin Systems, Inc.*, 118 F.3d 140 (3d Cir. 1997).

The purpose of the rule prohibiting the sale or assignment of a trademark in gross is to prevent a consumer from being misled or confused as to the source and nature of the goods or services that he acquires; use of the mark by the assignee in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another. *Sugar Busters LLC v. Brennan*, 177 F.3d 258 (5th Cir. 1999).

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

1   It is based on the foregoing analysis that D&D Gold's continued use of the

2   three bells design in connection with its products for the past five years forecloses

3   Plaintiff's trademark claims.

4   **B.    Plaintiff is Not Likely to Succeed on the Merits Because D&D Gold is**
          **Likely to Show that the Marks are Abandoned When Plaintiff Did Not**
5         **Continuously Use the Marks for Three Years**

6   D&D Gold's defense of abandonment is based on Plaintiff's failure to

7   continuously use the registered marks for more than three consecutive years from

8   April 2004 to October 2008, which is prima facie evidence that the registrant has

9   abandoned its trademark rights. 15 U.S.C. § 1127.

10  Here, the marks are abandoned, as Plaintiff has admitted that he made

11  attempts to reopen a plant in California to continue his business but was

12  unsuccessful until he relocated to China and made his first shipment to the United

13  States in 2008.  The interim period in which Plaintiff was developing his new

14  business confirms that Plaintiff did not use the mark for at least three years.

15  Therefore, this prima facie evidence will support D&D Gold's showing that

16  Plaintiff has abandoned the marks at issue.

17

18  **C.    Plaintiff is Not Likely to Succeed on the Merits Because D&D Gold's**
          **Fair Use Defense is an Absolute Defense**
19

20  Even if Plaintiff could prove that he owns valid trademarks, D&D Gold

21  asserted the related defenses of fair use in its Answer, which would bar all of

22  Plaintiff's claims, including possible consumer confusion. *Bhiari*, 119 F.Supp.2d

23  at 321; *ETW*, 332 F.3d at 923 n. 7 (dilution claim); *The Schafer Co. v. Innco Mgmt.*

24  *Corp.*, 797 F. Supp. 477, 482 (E.D.N.C. 1992), aff'd w/o op., 995 F.2d 1064 (4th

25  Cir. 1993) (common law claims).  Pursuant to 15 U.S.C. § 1115(b)(4) (and the

26  common law), a claim of trademark infringement is subject to the defense of fair

27  use.

28

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA  92612
Telephone (949) 851-7770

DEFENDANTS' MEMO OF P/A IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

That section provides:

> That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name or anyone in privity with such party or a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.

The Supreme Court held that the defendant has no independent burden to negate the likelihood of any confusion in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 118-19, 125 S.Ct. 542, 548-49 (2004). In doing so, the Court noted the "undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first," and that the Lanham Act was not meant to deprive commercial speakers of the ordinary utility of descriptive words. *Id.* The Supreme Court further noted that "if any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *Id.* (internal citations omitted).

Indeed, a trademark is not a right in gross that enables a holder to enjoin all reproductions. *ETW*, 332 F.3d at 922; see also, *Mattel, Inc. v. MCA Records, Inc.,* 28 F.Supp.2d 1120, 1141 (C.D. Cal. 1998), aff'd, 296 F.3d 894 (9th Cir. 2002). Yet, in this case, Plaintiff is attempting to do exactly that and by monopolizing the three-bell design to prevent D&D Gold from using the name or design in any manner. However, a simple design consisting of three bells, commonly attached to Christmas, holidays, and other festive events, is not enough to bar others from using a design or pattern that may seem similar. Plaintiff cannot expect to effectively and exclusively control such a common icon in the public domain. *Nancy Ann*, 197 F.2d at 295. Such a monopoly is adverse to the public interest. If the Nguyens' use is an infringement of Plaintiff's trademark rights in its stylized

1 versions of three bells or otherwise, it is tantamount to allowing Plaintiff to own a

2 common icon in gross. That is certainly not the purpose of trademark law. See

3 *Nancy Ann*, 197 F.2d at 295.

4 Finally, Plaintiff has failed to produce evidence that the Nguyens' use of the

5 name was unfair or in bad faith. The fact that the Nguyens' applied with the Patent

6 and Trademark Office so soon after entering the Settlement Agreement does not

7 mean there was a willful breach. On the contrary, such a expeditious application

8 demonstrates the Nguyens' good faith in protecting their new and distinct

9 trademark--which falls outside of the Settlement Agreement--from third parties. In

10 light of these facts, this Court will find that D&D Gold has a complete defense that

11 will make it unlikely that Plaintiff will succeed on the merits.

**1. A bare allegation of breach of contract cannot support an assertion of**
**trademark rights.**

14 The date of first use in commerce is the date that establishes priority as

15 between claimants to a mark. (See, e.g., *Sengoku Works Ltd v. RMC Intern., Ltd.*

16 (9th Cir. 1996) 96 F.3d 1217, 1219, as modified, 97 F.3d 1460 ("the party claiming

17 ownership must have been the first to actually use the mark in the sale of goods or

18 services").) The person who first uses the mark is the "senior user," and a person

19 who later uses the mark is known as the "junior user." Junior users of a mark do

20 not need to be disclosed in an application for federal trademark registration.

21 If an applicant has a good faith belief that it is the senior user, then the oath

22 [in the registration application] cannot be fraudulent. Any alleged failure to

23 disclose use by junior users is irrelevant and could not be material to the grant of a

24 federal registration.

25 Therefore, Plaintiff's Fourth Cause of Action for cancellation based upon

26 fraud on the USPTO must be dismissed.

27

28

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

DEFENDANTS' MEMO OF P/A IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## VII.  PRELIMINARY RELIEF WOULD NOT SERVE THE PUBLIC INTEREST

In addition, courts must consider the public interest as a factor in balancing the hardships when the public interest may be affected.  See *Department of Parks & Rec. for State of Calif. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124.  As previously discussed, the purpose of the rule prohibiting the sale or assignment of a trademark in gross is to prevent a consumer from being misled or confused as to the source and nature of the goods or services that he acquires.  *Sugar Busters*, 177 F.3d 258 (5th Cir. 1999).  This is because the subsequent use of the mark by the assignee in connection with a ***different goodwill*** and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another.

Here,  D&D Gold's merchants and customers have longstanding relationships with D&D Gold and have been purchasing its products for twenty years.  The only confusion as to the source of the merchandise will arise when and if Plaintiff begins tries to his merchandise with the three bells logo, at which time D&D Gold will surely move for an emergency preliminary injunction because Plaintiff's inferior product would result in a fraud on the purchasing public.

## VIII.  PLAINTIFF MUST SUBMIT A SUBSTANTIAL BOND IF THE INJUNCTION WERE TO ISSUE

If the Court enters an injunction, the bond that Plaintiff should be required to post should be substantial. When setting the amount of security, district courts should err on the high side.  *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000).  In the instant case, if an injunction issues, the appropriate bond amount should be $5 million.

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770

19

## VIII.  CONCLUSION

Plaintiff's motion should be denied because Plaintiff has failed to meet its burden of proof that it owns valid trademarks, which are a condition precedent to Plaintiff's claims.  Even if the condition precedent was satisfied, Plaintiff's claims are barred by fair use.  Finally, Plaintiff's unjustifiable delay in waiting more than four years to file this motion demonstrates that there is no irreparable injury.  The balance of hardships tips sharply in D&D Gold's favor, as its goodwill and reputation would be significantly damaged if the injunction were issued.  Therefore, this Court must deny Plaintiff's Motion for Preliminary Injunction.

Dated:  January 16, 2009              REZA & DEBENON

Jill Reza
JReza@RDLawfirm.com

Attorneys for Defendants,
Trong Van Nguyen, Lan Que Truong
Nguyen, Hung Van Nguyen, and
D&D Gold Product, Inc.

REZA & DEBENON
2600 Michelson Drive, Ste 800
Irvine, CA 92612
Telephone (949) 851-7770