O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

CIVIL MINUTES - GENERAL

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Granting in Part and Denying in Part Plaintiff's Motion for Preliminary Injunction

    Pending before the Court is Plaintiff's Motion for Preliminary Injunction. The Court heard oral argument on this matter on February 2, 2009. After considering all papers and arguments relating to this matter, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion.

I.     BACKGROUND

    From 1981-1985, Sam Liang ("Plaintiff") worked for D&D Gold Product Corporation ("D&D Gold"), a company that marketed and sold a variety of food items, such as spices, flour, curry paste, and chili sauce. In 1986, D&D Gold issued 1,000 shares, which were split between three different people. 330 of these shares were issued to Plaintiff; another 330 were purchased by Trong Van Nguyen, one of the defendants in this action. The remaining 340 shares were issued to Tram Van Luu ("Luu"), who, at the time of this transaction, was at least a partial owner in D&D Gold.

    In 1987, Luu sold his shares in D&D Gold. This resulted in Plaintiff and Trong Van Nguyen becoming the only two owners of D&D Gold. Apparently, Plaintiff and Trong Van Nguyen continued to operate D&D Gold without serious incident for a number of years. However, issues began to arise sometime during the mid-1990s to the early 2000s. From Trong Van Nguyen's standpoint, it was during this time that Plaintiff began operating a corporation that not only substantially marked up supplies it sold to D&D Gold, but that also competed with

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

D&D Gold "after hours and from the back door." *Trong Van Nguyen Decl.* ¶¶ 7-8. Allegedly, it was during this time that Plaintiff usurped more than three million dollars in unjust profits and conversion of goods from D&D Gold. *Id.* at ¶ 10. From Plaintiff's perspective, however, during this time, Trong Van Nguyen and his family were stealing money from D&D Gold by expensing personal activities and transferring money from D&D Gold to their other businesses and children. *Liang Decl.* ¶ 10.

The dispute between Plaintiff and Trong Van Nguyen culminated in a lawsuit, which was filed by Plaintiff in the Superior Court of California. *See Sam Tieu v. D&D Gold Product Corp.*, Case No. 01CC05460.[1] Ultimately, that lawsuit ended on April 15, 2004 with a settlement agreement ("Settlement Agreement") between Plaintiff, on the one hand, and, on the other hand, Trong Van Nguyen, Que Lan Truong Nguyen, Hung Van Nguyen (collectively, the "Nguyens"), and D&D Gold (collectively, "Defendants"). Under the terms of that agreement, Defendants were required to pay Plaintiff $700,000 and "transfer the three golden bell design/pattern . . . to Plaintiff for his exclusive use and ownership . . . ." *Liang Decl.*, *Ex.* 2, at p. 1. The Settlement Agreement further provided that upon its execution, "Defendants shall no longer be permitted to own, use, and claim any right to, the three golden bell design/pattern" except that Defendants retained the right "to finish using the existing inventory items including all packaging goods, items, wares, and merchandise bearing the three golden bell design/pattern by May 31, 2004." *Id.* at p. 2. Lastly, the agreement prohibited both parties from using "the wording "D&D GOLD" in English, in any by itself or in conjunction with any design/pattern." *Id.* at p. 1.

According to Plaintiff, subsequent to entering into the Settlement Agreement, he leased a plant in California because he planned to continue packaging and selling food items such as those previously sold by D&D Gold. These food items were to be sold under the three bells design trademark that was assigned to him under the Settlement Agreement. However, financing the business proved more difficult than Plaintiff originally imagined and, after roughly two years, he closed this plant and relocated to China, where he spent the next two years getting his plant in China "up and running." *Liang Decl.* ¶¶ 14-16.

Plaintiff claims that he planned to sell his food and spice products to markets in the United States that sell Asian food products. Consistent with these plans, Plaintiff, in October 2008, sent his first shipment of products from his factory in China to the United States. Plaintiff attempted to sell his food to certain markets but a number of merchants refused to accept his

---

[1] Before becoming a United States citizen on May 26, 2004, Plaintiff went by the name Sam Tieu.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

goods. Supposedly, the merchants declined Plaintiff's offers because they were concerned that their customers would confuse Plaintiff's goods with similar goods that Defendants have, for an unspecified time, been selling in the United States. Apparently, certain three bells design trademarks, which Plaintiff believes are "almost identical" to the mark assigned to him, are affixed to Defendants' goods. *Liang Decl.* ¶¶ 16-20.

At some point in the last few months, Plaintiff investigated the Nguyens' business practices. To his surprise, he discovered that on April 16, 2004, the day after he signed the Settlement Agreement with the Nguyens, they filed a registration with the United States Patent and Trademark Office for a three bells design trademark that Plaintiff believes is "identical" to the one that was assigned to him. This application was registered on July 4, 2006. Plaintiff also discovered that on April 20, 2004, the Nguyens filed applications with the United States Patent and Trademark Office for the word mark, "THREE GOLDEN BELLS," in three different languages—French, Vietnamese, and Chinese. These applications were all registered during September 2006. Lastly, Plaintiff discovered that on May 31, 2005, the Nguyens successfully registered the word mark, D&D GOLD.

On December 12, 2008, Plaintiff commenced the instant lawsuit against Defendants. Then, on December 16, 2008, Plaintiff filed the instant Motion for Preliminary Injunction. Presently, Plaintiff moves for an order that would enjoin Defendants from manufacturing, distributing, shipping, advertising, marketing, promoting, selling or offering to sell any product having the three bells design trademarks as shown in the figure below:



**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

Plaintiff also seeks to enjoin Defendants from manufacturing, distributing, shipping, advertising, marketing, promoting, selling or offering to sell any product having the THREE GOLDEN BELLS word mark, the D&D GOLD word mark, or any confusingly similar trademark.

II.     LEGAL STANDARD

To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in her favor. *Big Country Foods v. Bd. of Educ. of Anchorage School Dist.*, 868 F.2d 1085, 1088 (9th Cir. 1989). While stated as alternatives, these formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. *Id.* Normally, under either formulation, the moving party must show both a significant threat of irreparable injury, irrespective of the magnitude of the injury, *id.*, and a fair chance of success on the merits. *See Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994). However, in cases alleging trademark infringement, irreparable injury generally may be presumed upon a showing of likelihood of consumer confusion. *See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999).[2]

III.    DISCUSSION

The gravamen of Plaintiff's multiple claims against Defendants is that under the Settlement Agreement, he retained specific rights in certain trademarks, most important of which are the exclusive rights to use the three bells design trademark and the word mark, D&D GOLD. These rights have, according to Plaintiff, been infringed multiple times by Defendants' manufacturing and marketing of various food and spice products that bear various versions of the three bells design trademark, THREE GOLDEN BELLS, and D&D GOLD.

Plaintiff presently moves for a preliminary injunction in relation to three claims he brings against Defendants: his trademark infringement claim, his breach of contract claim, and his

---

[2] District courts in the Ninth Circuit have discretion to apply one of two tests in determining whether to grant a preliminary injunction: the alternative test, articulated above, or the traditional test. *See Caribbean Marine Servs. Co. v. Baldrige,* 844 F.2d 668, 674 (9th Cir. 1988). For sake of consistency and ease of presentation, the Court chooses to use the alternative test throughout this Order.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

fraudulent trademark registration claim. The propriety of the preliminary injunction is addressed in relation to each of these claims, in turn.

    A.    <u>Trademark Infringement - Unfair Competition</u>

To establish an unfair competition claim under section 43(a) of the Lanham Act, Plaintiff must establish that Defendants are using a mark confusingly similar to a valid, protectable trademark of Plaintiff's. *Brookfield*, 174 F.3d at 1046.

        1.    <u>Probable Success on the Merits</u>

            a.    <u>Whether Plaintiff Has a Protectable Trademark</u>

As a threshold matter, the Court must first determine whether Plaintiff has a protectable trademark in the three bells design trademark and D&D GOLD. The Court takes up this inquiry beginning first with the three bells design trademark.

                i.    <u>The Three Bells Design Trademark</u>

It is beyond dispute that the three bells design is a trademark. After all, it is undoubtedly a "symbol" used by a person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." *See* 15 U.S.C. § 1127 (defining trademark). What is in dispute, however, is who presently owns the trademark.

As an initial matter, the Court observes that there appears to be no disagreement that Defendants originally owned the trademark. *See Liang Decl.*, *Ex.* 2, at p. 3, ¶ 8 ("Defendants hereby warrant and represent that Defendants are the sole owner/user of the three golden bell design/pattern . . . ."). And despite Defendants' arguments to the contrary, it appears that this trademark was validly assigned to Plaintiff. Indeed, paragraph 1 of page 1 of the Settlement Agreement provides that "Defendants shall . . . transfer the three golden bell design/pattern . . . to Plaintiff for his excusive use and ownership." *Id.* at p.1. The intent of the parties to assign to Plaintiff sole use of the three bells design trademark is further evidenced by paragraph 5 on page 2, and paragraph 8 on page 3. *See id.* at p. 2 ("Plaintiff will have the exclusive ownership and right to use [the three golden bell design/pattern]."); *id.* at p. 3 ("Defendants hereby warrant and represent that Defendants are the sole owner/user of the three golden bell design/pattern with full

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

right to transfer the design/pattern as Defendants may choose and that no other person(s) or entity(ies) whatsoever has any claim, right, title, interest or lien in, to or on the three golden bell design/pattern being transferred by Defendants to Plaintiff.")

     Now, it is Defendants' position that the assignment made to Plaintiff was what is commonly referred to as an "assignment in gross," *i.e.*, an assignment of a mark without the associated goodwill. *See Black's Law Dictionary* 128 (8th Ed. 2004). If this is true, then Plaintiff has no rights in the aforementioned trademark. This is because, under the Lanham Act, a mark cannot be assigned apart from the goodwill in the mark; thus, the assignee of an assignment in gross acquires no rights by such a purported assignment. *Mister Donut of Am., Inc. v. Mr. Donut, Inc.,* 418 F.2d 838, 842 (9th Cir. 1969); *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992) (noting that for a trademark assignment to confer rights on the purchaser, goodwill must accompany the assignment, but "[i]t is not necessary that the entire business or its tangible assets be transferred").

     Contrary to Defendants' arguments otherwise, there is nothing in the Settlement Agreement that evidences, much less suggests, that the parties intended to make an assignment in gross. Rather, the Settlement Agreement speaks only in terms of an "assignment" without qualification. Presumably, if the parties intended to depart from an assignment, at least as it is plainly known in law, they would have indicated such. Thus, if anything, their failure to do so evidences their intent *not* to make an assignment in gross. Accordingly, the Court interprets the Settlement Agreement to confer upon Plaintiff all rights in the aforementioned trademark.

     Next the Court considers what version of the three bells design trademark was assigned to Plaintiff. Plaintiff argues that he has a protectable trademark in at least two different variations of the three bells design trademark. However, the Settlement Agreement only contains, attached as Exhibit 1 to the Settlement Agreement, a depiction of the trademark in the following manner:



**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**link #11**
**cc: FISCAL**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

From hereon out, the Court will refer to this depiction of the three bells design trademark as the "Three Bells Mark."

Now, it may very well be the case, as Plaintiff argues that it is, that Defendants assigned to Plaintiff the variation of the three bells design trademark depicted above as well as other variations of it. However, Plaintiff has failed to present sufficient evidence to the Court that Defendants assigned to Plaintiff, for example, the variation of the three bells design depicted immediately below, which the Court will hereinafter refer to as "Mark 2":



Granted, the Settlement Agreement does state that the trademark depicted in Exhibit 1 is a "sample" of the three bell design trademark, thus implying that more than one version of the three bells design trademark was assigned to Plaintiff. But based on the record before it the Court cannot determine that Defendants actually assigned Mark 2 to Plaintiff, and not another version of the three bells design trademark, to Plaintiff. Thus, the Court is unable to conclude that Plaintiff has a protectable trademark in Mark 2.

ii.      D&D GOLD

The Court next considers whether Plaintiff has a protectable trademark in D&D GOLD. Plaintiff argues that under the Settlement Agreement, he retained the exclusive right to use the word mark, D&D Gold. In support of this position, he points to a provision in the agreement that provides that "[n]either party has the right to use the wording 'D&D GOLD' in English, in and by itself or in conjunction with any design/pattern." *Liang Decl.*, *Ex.* 2 at p. 1.

Upon review of the Settlement Agreement, the Court reaches a different conclusion than that reached by Plaintiff. Plaintiff conflates the concept of a prohibition with the idea of an

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

assignment. Simply because Defendants are prohibited from using the word mark does not necessarily mean that Plaintiff exclusively owns the word mark at issue. If such an assumption could be made, then it would hold equally true that the prohibition on Plaintiff's use of the word mark is evidence that Defendants, and not Plaintiff, own the word mark. Put simply, the Settlement Agreement does not, one way or the other, resolve the issue as to who owns the word mark in question. However, because it is Plaintiff who seeks the preliminary injunction, the burden was on him to demonstrate that he had a protectable trademark. *See S&R Corp. v. Jiffy Lube Int'l,* 968 F.2d 371, 375 (3d Cir. 1992).

      iii.  Conclusion

  In summary, Plaintiff has demonstrated that he has a protectable trademark in the Three Bells Mark. However, Plaintiff has also failed to demonstrate that he has a protectable trade mark in Mark 2 and the word mark, D&D Gold.

    b.  Likelihood of Confusion

  Having determined that Plaintiff only has a protectable trademark in the Three Bells Mark, the Court now considers whether the similarity between Plaintiff's mark and the marks affixed to Defendants' goods will likely confuse consumers. Plaintiff contends that Defendants are currently infringing the Three Bells Mark through their use of three different marks. One of these marks is the word mark, THREE GOLDEN BELLS, which Defendants registered on September 2006. The other two marks are symbol marks and are depicted on the images immediately below:

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

 

The first of these marks is Mark 2, which was discussed briefly above. For ease of presentation, the second of these marks—the one pictured on the second package—will be referred to as "Mark 3."

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). To evaluate the likelihood of confusion, courts generally apply the so-called *Sleekcraft* factors. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). These factors include: 1) the similarity of the marks; 2) the relatedness or proximity of the two companies' products or services; 3) the strength of the registered mark; 4) the marketing channels used; 5) the degree of care likely to be exercised by a consumer in selecting goods; 6) the accused infringer's intent in selecting its mark; 7) evidence of actual confusion; and 8) the likelihood of expansion in product lines. *Id.* at 348-49. Each of these factors is addressed in turn.[3]

i. The Similarity of the Marks

---

[3] The Court takes up the following analysis of the *Sleekcraft* factors in relation to THREE GOLDEN BELLS, Mark 2, and Mark 3. Because much of the analysis is the same in relation to each mark, it should be understood that, generally, the following analysis applies equally to each factor. However, where the Court's analysis differs in regard to the three marks at hand, the Court will note such.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

The Court first analyzes the similarity of the marks. Generally, courts apply three axioms when determining the similarity of the marks: (1) marks should be considered in their entirety and as they appear in the marketplace; (2) similarity is best adjudged by appearance, sound, and meaning; and (3) similarities weigh more heavily than differences. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).

With respect to Mark 3, a single glance at the Three Bells Mark and Mark 3 confirms their similarities. Both marks consist of three bells, aligned in the exact same fashion, enclosed in a circle. The circle in turn is matted by two triangles, on top of which lies a horizontal bar. Indeed, with the exception of the D&D GOLD word mark embossed in the horizontal box in Mark 3, it appears that the Three Bells Mark and Mark 3 are virtually identical.

However, the Court reaches a much different conclusion when it compares the Three Bells Mark with Mark 2. Granted, both marks consist of three bells. However, the bells are situated very differently in each mark. The bells in the Three Bells Mark stand perfectly straight while two of the bells in Mark 2 are tilted at a noticeable degree. Additionally, the bells in the Three Bells Mark are staggered while the tops of the bells in Mark 2 appear to be aligned along a horizontal axis. Lastly, the bells in these marks are not matted in the same manner and only the bells in the Three Bells Mark are enclosed in a circle.

Likewise, the Court finds THREE GOLDEN BELLS and the Three Bells Mark are different. It is true that "words and their pictorial representations are treated the same in determining the likelihood of confusion between two marks." *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329 (6th Cir. 1973) (citations omitted). Here, however, there is not much similarity between THREE GOLDEN BELLS and the Three Bells Mark. To begin with, there are countless types of bells in existence. Thus, THREE GOLDEN BELLS may very well refer to three mission-style bells or Christmas bells. It does not, as Plaintiff seems to suggest it does, necessarily and only refer to the style of bells portrayed in the Three Bells Mark. Equally important, Plaintiff has failed to demonstrate that the Three Bells Mark is always colored gold. As far as the Court knows, the bells in the Three Bells Mark are sometimes orange or blue. If this is the case, and the Court has no reason to assume that it is not, then the word mark is drastically different than the Three Bells Mark.

In summary, the Court has no difficulty in concluding that the Three Bells Mark and Mark 3 are virtually identical. However, Plaintiff has failed to convince the Court that the Three

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

Bells Mark is similar to Mark 2 and THREE GOLDEN BELLS. Accordingly, insofar as this factor relates to Mark 3, it tips in Plaintiff's favor. However, insofar as this factor relates to Mark 2 and THREE GOLDEN BELLS, it tips in Defendants' favor.

      ii.   Relatedness and Proximity of Services

"Where goods are related or complementary, the danger of consumer confusion is heightened." *Gallo*, 967 F.2d at 1291. In this case, the services offered by Plaintiff and Defendants are very similar. Both parties manufacture and sell spices, flour, curry paste, chili paste, vinegar and other food items. *Liang Decl.* ¶ 20. Moreover, both parties appear to specially market and sell these goods to merchants who primarily deal with Asian foods. *Id.* Based on the foregoing, the Court finds that since these goods are closely related, consumers will likely be confused by similar marks. *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 903 (9th Cir. 2002). Thus, this factor weighs in favor of finding the probability of a likelihood of confusion.

      iii.   Strength of the Marks

The strength of a trademark is evaluated in terms of its conceptual strength and commercial strength. *Dreamwerks*, 142 F.3d at 1130 n.7. In making this evaluation, courts classify a mark along a spectrum of increasing inherent distinctiveness. *See Brookfield*, 174 F.3d at 1058. Generic marks are the weakest and thus are afforded the narrowest ambit of protection from infringing uses. *Id.* Next come descriptive marks; then suggestive marks. *Id.* Finally, arbitrary or fanciful marks are considered the strongest and thus will be afforded the widest ambit of protection from infringing uses. *Id.*

Plaintiff manufactures and sells spices, flour, curry paste, chili sauce, chili paste, vinegar and other food items. *Liang Decl.* ¶ 20. Nothing about the Three Bells Mark describes the goods Plaintiff manufactures and sells. Likewise, the Three Bells Mark does not connote anything about the product to which it is attached. Instead, the Three Bells Mark consists of symbols that are "arranged in an arbitrary way that is non-descriptive of any quality of the goods or services." *Official Airline Guides v. Goss*, 6 F.3d 1385, 1390 (9th Cir. 1993). Thus, the Court deems the Three Bells Mark to be arbitrary and, therefore, affords it a wide ambit of protection.

      iv.   Marketing Channels

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

"Convergent marketing channels increase the likelihood of confusion." *AMF*, 599 F.2d at 353. There is evidence in the record that both parties' goods are to be sold under the same roof. *Liang Decl.* ¶ 20; *Opp.* at 13. If Plaintiff is in fact able to convince merchants to purchase and sell his goods, it is highly likely that Plaintiff's goods will be sold in proximity to Defendants' goods. Thus, because similar markets are involved, this factor weighs in favor of finding the probability of a likelihood of confusion.

v.      The Degree of Care by Customers

What is expected of a reasonably prudent customer depends on the circumstances. *See Brookfield*, 174 F.3d at 1060. Accordingly, courts expect customers to be more discerning—and less easily confused—when they purchase expensive items. *See id*; *Accuride Int'l, Inc. v. Accuride Corp.,* 871 F.2d 1531, 1537 (9th Cir. 1989). On the other hand, courts expect customers to exercise less care when they deal with inexpensive products, thus making confusion more likely. *Brookfield*, 174 F.3d at 1060; *Gallo*, 967 F.2d at 1293. Here, the goods sold by both parties are relatively inexpensive; most sell in a range of $0.60--$4.00 per item. *Liang Decl.* ¶ 21. Given the relative inexpensiveness of these goods, customers most likely will not exercise great care in purchasing these goods. Thus, confusion amongst customers is likely.

vi.     Accused Infringers' Intent

The Ninth Circuit has emphasized the "minimal importance of the intent factor." *GoTo.com*, 202 F.3d at 1208. Plaintiff directs the Court's attention to the fact that the day after Defendants signed the Settlement Agreement, they filed a registration with the United States Patent and Trademark Office for a three bells design trademark. *See Katzenellenbogen Decl.*, *Ex. A*. Plaintiff also directs the Court's attention to the registration of THREE GOLDEN BELLS with the same office. These actions, Plaintiff believes, are evidence of their intent to infringe.

The Court disagrees. Had Defendants' registered a mark that was virtually identical to Plaintiff's, then that registration would be evidence of Defendants' bad faith. But, here, the applications and registrations relate to trademarks that are arguably different than the Three Bells Mark. Thus, the applications and registrations are not evidence of Defendants' bad faith, as Plaintiff contends that they are. Thus, insofar as this factor relates to Mark 2 and THREE GOLDEN BELLS, this factor tips in Defendants' favor.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**link #11**
**cc: FISCAL**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

However, the Court also finds that this factor tips in Plaintiff's favor, at least insofar as it relates to Mark 3. Defendants entered into a Settlement Agreement with Plaintiff on April 15, 2004. That Settlement Agreement included a picture of the Three Bells Mark that Defendants assigned to Plaintiff. *See Opp.* 5:24-27. Thus, Defendants, as parties to the Settlement Agreement, were well-aware that they had assigned the Three Bells Mark to Plaintiff. Accordingly, the Court agrees with Plaintiff that Defendants must have known or, at the very least, should have known, that they were prohibited from using a mark virtually identical to the Three Bells Mark.

vii.   Evidence of Actual Confusion

Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely. *Plough, Inc. v. Kreis Labs.*, 314 F.2d at 635, 639 (9th Cir. 1963). Proving actual confusion is difficult, however, *G. D. Searle & Co. v. Chas. Pfizer & Co.*, 265 F.2d 385, 389 (7th Cir. 1959), and the courts have often discounted such evidence because it was unclear or insubstantial. *See, e.g., Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 800 (9th Cir. 1970).

The Court is not favorably impressed with the evidence adduced by Plaintiff in support of his contention that this factor tips in his factor. Plaintiff has only provided evidence that some merchants are unwilling to sell his products because they are supposedly concerned about their customers becoming confused between his goods and Defendants' goods. *See Liang Decl.* ¶ 17. However, the case law suggests that in evaluating this factor, the Court should look at confusion amongst the end-consumers, not merchants. *See, e.g., Carter-Wallace, Inc.*, 434 F.2d 794 at 800. Plaintiff has not pointed to any actual confusion amongst consumers. Accordingly, the Court finds that Plaintiff has not provided sufficient evidence to support a finding that this factor tips in his favor.

viii.   Likelihood of Expansion in Product Lines

"A 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *AMF*, 599 F.2d at 354. "When goods are closely related, any expansion is likely to result in direct competition." *Id.*

Here, there is evidence that Plaintiff has already made attempts to expand his business to compete with Defendants. Indeed, the fact that his attempts were rebuffed by merchants is the

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

very reason why Plaintiff commenced this lawsuit and filed the present Motion. Accordingly, the Court finds that this favor weighs in Plaintiff's favor.

### ix.     Conclusion

In sum, upon consideration of the totality of the facts presented, the Court finds that seven of the eight *Sleekcraft* factors tip in Plaintiff's favor insofar as the trademark claim is based on Defendants' use of Mark 3. Thus, insofar as the trademark infringement claim relates to Mark 3, Plaintiff has demonstrated that Defendants are using a mark confusingly similar to a valid, protectable trademark of Plaintiff's.

However, the Court also finds that Plaintiff has failed to show that he is likely to succeed on his trademark infringement claim insofar as it is based on Defendants' use of Mark 2 and THREE GOLDEN BELLS. While five of the eight *Sleekcraft* factors tip in Plaintiff's favor in the comparison between the Three Bells Mark and these latter two marks, the fact that these marks are dissimilar strongly suggests that there will be no likelihood of confusion. *See Brookfield*, 174 F.3d at 1054 (noting that the similarity of the marks factor is always an "important" factor).

### c.     Defenses

Lastly, the Court considers whether Defendants will be able to prevail on its defense of abandonment. 15 U.S.C. § 1127 provides that a mark is "abandoned" if, inter alia, "its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances."

The Court rejects this argument. Granted, there is no evidence that Plaintiff has used his mark in the last four years. However, there is ample evidence that Plaintiff has devoted significant time, energy, and effort over the last four years to market and sell goods affixed with the Three Bells Mark. *See, e.g.*, *Liang Decl.* ¶¶ 14-17 (describing the difficulties Plaintiff has faced in continuing his business). Such expenditures of time, energy, and effort strongly demonstrate that Plaintiff intends to resume use of the mark as soon as he can find merchants who are willing to purchase his goods.

### 2.     Irreparable Injury

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

In trademark infringement actions, the Ninth Circuit has held that once the plaintiff has established a likelihood of confusion, irreparable harm is presumed. *GoTo.com*, 202 F.3d at 1209. This is because it is reasonable for the court to assume that continuing infringement will leave the plaintiff with a loss of control of its reputation and a loss of its goodwill. *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 526 (9th Cir. 1984).

Because of their likely success on the merits in a section 43(a) claim made in relation to Mark 3, Plaintiffs are entitled to a presumption of irreparable harm.

   3.  Conclusion

Insofar as Plaintiff's trademark infringement claim relates to Defendants' use of Mark 3, Plaintiff has successfully demonstrated a combination of probable success on the merits and the possibility of irreparable injury. *Big Country Foods*, 868 F.2d at 1088. Accordingly, a preliminary injunction that enjoins Defendants from using Mark 3 should issue.

  B.  Alternative Avenues for Relief

Plaintiff argues that even if he cannot show that he is likely to succeed on the merits in his trademark infringement claim insofar as it relates to Mark 2 and THREE GOLDEN BELLS, he can show that he is likely to succeed on his breach of contract claim in relation to Defendants' use of D&D GOLD, and his fraudulent trademark registration claim. Thus, the preliminary injunction should still issue in relation to Mark 2 and THREE GOLDEN BELLS.

   1.  Breach of Contract Claim

     a.  Probability of Success on the Merits

The Court first considers whether Plaintiff has shown that he is likely to succeed on his breach of contract claim. First, though, a point of clarification is due. Plaintiff's breach of contract claim relates to Defendants' use of the word mark, D&D GOLD. It does not, however, relate to Defendants' use of THREE GOLDEN BELLS or design that comprises Mark 2.

To succeed on his breach of contract claim, Plaintiff must prove that Defendants wrongfully failed to perform a contract. *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 479, 54 Cal. Rptr. 2d 888 (1996). Contained in the Settlement

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

Agreement is an unequivocal prohibition: "Neither party has the right to use the wording 'D&D GOLD' in English, in and by itself or in conjunction with any design/pattern." *Liang Decl.*, *Ex. 2* at p. 1. Plaintiff has submitted evidence that Defendants are currently producing and selling goods that use the D&D GOLD word mark. *See Liang Decl.* ¶ 18. Such goods bear the exact word mark at issue, D&D GOLD, or a variation of it: "D&D GOLD PRODUCT." *Id.* Regardless of which iteration of the word mark is affixed to Defendants' goods, it seems that were this suit to proceed to trial, Plaintiff would very likely succeed on the merits of his breach of contract claim.

      b.      <u>Irreparable Harm</u>

Plaintiff would also likely be able to demonstrate irreparable harm. Because this is a breach of contract claim, Plaintiff is not afforded a presumption of irreparable harm. *Cf. Brookfield*, 174 F.3d at 1066. Ultimately, though, the lack of such a presumption is of no moment. Presently, merchants are refusing to sell Plaintiff's goods. *Liang Decl.* ¶ 22. Consequently, these goods sit in storage in El Monte, California. *Id.* Now, admittedly, this is not a case where the food will spoil if the preliminary injunction is not issued. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 489 (C.D. Cal. 1995) ("The tomatoes will spoil if we don't move them immediately.") However, this is a case where as each day passes, Plaintiff's injury becomes worse. Plaintiff has adduced his own testimony which evidences the facts that merchants are less likely to buy his goods if they are near the expiration date. *Liang Supp. Decl.* ¶ 5. And, even if merchants do buy these goods, they must be sold at a deep discount. *Id.*

Admittedly, the decrease in value of Plaintiff's goods may not seem serious enough to warrant a preliminary injunction. But the applicable test only requires a showing of a significant threat of irreparable harm, not a threat of significant irreparable harm. *Big Country Foods*, 868 F.2d at 1088. Thus, the degree of imminence of harm, and not the degree of harm itself, is what matters. The fact that Plaintiff has already suffered harm and will continue to suffer this harm absent the injunction is sufficient to show that he faces a significant threat of irreparable harm.[4]

---

[4] Defendants also argue that Plaintiff's "delay" in bringing this suit cuts against a finding that he will suffer imminent irreparable harm. But there is no evidence of delay in the record. Plaintiff first became aware of Defendants' allegedly unlawful conduct in October 2008. Roughly two months later, Plaintiff filed the instant lawsuit and Motion. In light of how time consuming the preparation and filing of a motion for preliminary injunction is, the Court finds that, based on the present circumstances, no delay

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

CIVIL MINUTES - GENERAL

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

Moreover, it bears repeating that the applicable test represents two points on a sliding scale. *Id.* Thus, as the degree of probability of success on the merits increases, the degree of irreparable harm decreases. *Id.* In light of the strong likelihood that Plaintiff will succeed on the merits of his breach of contract claim, the Court finds the evidence adduced by Plaintiff more than sufficient to support the issuance of a preliminary injunction in his favor.

        2.        <u>Fraudulent Trademark Registration Claim</u>

Plaintiff's remaining claim on which a preliminary injunction may be based is for fraudulent trademark registration. Specifically, Plaintiff seeks cancellation of certain registered trademarks on the basis of fraud, *see* 15 U.S.C. § 1064(c), on the ground that the Nguyens knowingly submitted false declarations of ownership to the United States Patent and Trademark Office in their applications for registration of Mark 2 and THREE GOLDEN BELLS.[5]

Plaintiff is unlikely to succeed on the merits of these claims. As noted above, Plaintiff has not demonstrated that he owns a protectable trademark in Mark 2 or THREE GOLDEN BELLS. Plaintiff has also failed to adequately call into question Defendants' ownership of these same marks. Accordingly, Plaintiff cannot show that Defendants fraudulent registered trademarks that did not belong to them. Since Plaintiff cannot show a fair chance of success on the merits, the preliminary injunction may not issue. *Stanley*, 13 F.3d at 1319

        C.        <u>Bond</u>

Lastly, the court must consider setting bond.[6] The district court is afforded wide

---

existed in this case.

[5] Plaintiff also seeks cancellation of the registered word mark, D&D GOLD. However, as the Court has already found that Plaintiff is likely to succeed on its breach of contract claim based on Defendants' use of D&D GOLD, the Court finds it unnecessary to address Plaintiff's fraudulent trademark registration claim based on the same activity.

[6] Federal Rule of Civil Procedure 65(c) provides that:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

link #11
cc: FISCAL

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

discretion in setting the amount of the bond, *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999), and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction. *See Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000).

Defendants, without explanation or reason, baldly assert that Plaintiff should be required to submit a bond of at least $5,000,000. Plaintiff counters this assertion on page 21 of his Reply. However, because Plaintiff's counterargument is found nine pages past the established 12-page limit, the Court does not consider it. Instead, the Court relies on its experience and knowledge in setting the bond. The Court sets the bond at $10,000.

IV.   CONCLUSION

Based on the record before it, the Court GRANTS IN PART and DENIES IN PART, without prejudice, Plaintiff's Motion for a Preliminary Injunction. Specifically, upon the posting of the bond, the Court ORDERS the following:

1. The Nguyens, all parents, subsidiaries, affiliates, and officers of D&D Gold, the Nguyens' agents, servants, employees, attorneys, and those persons in active concert or participation with the Nguyens who receive actual notice of this Order are immediately enjoined from manufacturing, distributing, shipping, advertising, marketing, promoting selling or offering to sell any product having the Three Bells Mark as shown in the figure below:



2. The Nguyens, all parents, subsidiaries, affiliates, and officers of D&D Gold, the Nguyens' agents, servants, employees, attorneys, and those persons in active concert or participation with the Nguyens who receive actual notice of this Order are immediately enjoined from manufacturing, distributing, shipping, advertising, marketing, promoting selling or offering to sell any product having the D&D

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**link #11**
**cc: FISCAL**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-8211 PSG (JCx) | Date | February 5, 2009 |
|---|---|---|---|
| Title | Sam Liang v. Trong Van Nguyen | | |

GOLD word mark, or any confusingly similar trademark, such as D&D GOLD PRODUCT.

**IT IS SO ORDERED.**